IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


RICHARD CHRISTOPHER DACHEFF, III                                    PLAINTIFF

            v.                        Civil No. 09-3050

SHERIFF ROBERT GRUDEK; and
NURSE BRENDA SCHULTZ                                                 DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Richard Christopher Dacheff, III (hereinafter Dacheff), filed this civil rights lawsuit pursuant to the provisions of 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

The events that are the subject of this case occurred while Dacheff was incarcerated at the Carroll County Detention Center (CCDC) from May 12, 2009, to July 28, 2009.  Defendants filed a motion for summary judgment (Doc. 15).  To assist Plaintiff in responding to the motion for summary judgment, I propounded a questionnaire (Doc 22)  Plaintiff filed a timely response to the questionnaire (Doc. 23).  The motion is now ready for decision.

### I.  BACKGROUND

On May 11, 2009, Dacheff was involved in a motor vehicle accident.  *Plaintiff's Response* (Doc. 23)(hereinafter *Resp.*) at ¶ 1.  He was arrested at approximately 8:30 p.m. and charged with a number of offenses.  *Id.* at ¶ 2(A).

He was booked into the CCDC on May 12, 2009.  *Resp.* at ¶ 2(A).  A medical questionnaire was completed as part of the booking process.  *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 2, Vol. 1 at pages 1-2.  It stated Dacheff had arthritis in his lower back, was hypoglycemic, had a possible fractured left wrist due to an accident and had also hit his head during the accident.  *Id.*

On May 15th, Dacheff submitted a request asking to be moved to a bottom bunk.  *Resp.* at

-1-

¶ 3(A).  He indicated one was available and also told the officer that he had previously had surgery on both of his ankles.  *Id.*  In response, Dacheff was told there was no information regarding these surgeries in his records but a housing officer would check for scars.  *Id.* at ¶ 3(B).  If Dacheff had surgical scars, he was to be moved to a bottom bunk.  *Id.*  Dacheff was moved to a bottom bunk.  *Id.* at ¶ 3(C).

On May 24th, Dacheff submitted a medical request stating he had been in a couple of automobile accidents recently and hurt his wrist and collar bone.  *Resp.* at ¶ 4(A).  He stated the bones might be broken because they were getting worse.  *Id.*  He asked for x-rays and to see the doctor.  *Id.*

In response, he was told to use a hot pack on his neck and collarbone.  *Resp.* at ¶ 4(B).  He was told to keep his wrist wrapped and that permission had to be obtained from the Arkansas Department of Correction (ADC) before an appointment with the doctor could be made.  *Id.*

When Dacheff was seen by Nurse Schultz, she completed a document called a "nursing health history."  *Resp.* at ¶ 4(C).  She noted Dacheff was allergic to penicillin and had an appendectomy in 2007.  *Id.*  She also noted he was complaining of collar bone pain, left wrist pain, back of neck pain, and right elbow pain.  *Id.*  She noted that Dacheff's left wrist had minimal movement and extra pain.  *Resp.* at ¶ 4(D).  She indicated it was possibly fractured.  *Id.*

On May 30th, Dacheff submitted a request asking for another mattress.  *Resp.* at ¶ 5.  He stated he had arthritis in his lower back and it was starting to hurt and lock up on him.  *Id.*  Dacheff also stated he had been in an automobile accident.  *Id.*  In response, Dacheff was told the ADC had approved his request for a doctor appointment and that he would be seen.  *Id.* at ¶ 6.

On May 30th, Dacheff again asked for an extra mattress because of his medical condition.

*Resp.* at ¶ 7.  In response, he was told an order would be needed for him to get an extra mattress. *Resp.* at ¶ 8.  He was also told the ADC had approved his request to see the doctor and an appointment had been made.  *Id.*

On June 3rd, Nurse Schultz made an appointment for Dacheff with Dr. Malone at 10:00 a.m. on June 11th.  *Defts' Ex.* 2, Vol. 2 at page 22.  On June 6th, Dacheff requested something for a sore throat and was told to rinse his throat with warm water.  *Resp.* at ¶ 10.

On June 7th, Dacheff submitted a medical request stating that his ankle had been hurting and swelling.  *Resp.* at ¶ 11.  Nurse Schultz responded saying that the doctor's appointment had been rescheduled.  *Id.* at ¶ 12(A).  Dacheff was not told why the appointment had been rescheduled.  *Id.*

Nurse Schultz saw Dacheff on June 11th for complaints of pain in his right ankle.  *Resp.* at ¶ 12(C).  She noted that Dacheff's ankle was swollen and discolored and he was having some difficulty walking.  *Id.*  She wrapped his ankle.  *Id.* at ¶ 12(D).  She also told him to keep his ankle elevated and to use a hot pack.  *Id.*  She ordered Dacheff to have an extra blanket to elevate his ankle. *Id.*

On June 17th, Nurse Schultz rescheduled Dacheff's appointment for June 23rd at 10:15 a.m. *Defts' Ex.* 2, Vol. 2 at page 22.  Dacheff was seen by Dr. Malone on June 23rd.  *Resp.* at ¶ 14.

According to Defendants' records, the x-rays showed intact "ortho hardware" in Dacheff's ankle.  *Defts' Ex.* 4 at pg. 3.  His elbow and back x-rays were negative and his left wrist x-ray showed an old fracture suspicious of carpal bone necrosis.  *Id.*  Dacheff maintains that only one x-ray was taken of the side of his elbow and not of the ball part of the elbow where it was "soft."  *Resp.* at ¶ 15.

Progress notes made by Gloria Wood, in Dacheff's chart at Dr. Malone's office, indicate they

had to wait for approval from the ADC for Dacheff to be seen by an orthopedist. *Id.* at ¶ 16.  Wood wrote:  "Per Dr. Malone the patient should have had medical attention before now.  He states that he may have a permanent disability due to this injury." *Resp.* at ¶ 17; *Defts' Ex.* 4 pg. 13.  Dacheff was diagnosed with a left wrist fracture, and soft tissue injuries to the back, ankle, and elbow. *Resp.* at ¶ 18; *Defts' Ex.* 4 pg. 14.  It was noted Dacheff had been in an automobile accident six weeks ago. *Id.*  The plan was to refer Dacheff to an orthopedic doctor about his wrist. *Id.*  The clinic faxed Dacheff's records from the visit to the ADC on June 23rd. *Defts' Ex.* 4 pg. 13.

On June 28th, Dacheff asked if his orthopedic appointment had been scheduled. *Resp.* at ¶ 20.  He stated his wrist was hurting. *Id.*  In response, he was told that as soon as ADC approval was obtained an appointment would be scheduled. *Id.* at ¶ 21.

On June 29th, Dacheff submitted a grievance complaining about the lack of medical treatment. *Resp.* at ¶ 22(A).  Dacheff stated he had been incarcerated since May 11th, his wrist was fractured, and still nothing had been done to get it "fixed."   *Id.*  Nurse Schultz called Dr. Malone's office and left a voice mail for Gloria asking if there was an order for an orthopedic consult. *Defts' Ex.* 2, Vol. 2 page 22.

On June 29th, Dacheff also asked for another wrap for his wrist. *Resp.* at ¶ 23.  The nurse responded stating she would leave one at booking with Dacheff's name on it. *Id.*

On July 2nd, Dacheff submitted a grievance complaining about not receiving medical care. *Resp.* at ¶ 24(A).  He stated his wrist was broken and he could not move it very well. *Id.*  In response, Sgt. Cribs stated that, per Tonya Dixson, in medical services at the ADC, the ADC would not approve further treatment until Dacheff was transferred to the ADC. *Id.* at ¶ 24(B).  Cribs indicated he was told Dacheff was on the list for the next available bed. *Id.*

-4-

On July 4th, Dacheff submitted a request stating he had an infected tooth and needed something for pain. *Resp.* at ¶ 24(C). He also asked why he had been charged for a nurse visit when he was ADC committed. *Id.* Nurse Schultz responded that nurse visits were not paid for by the ADC and that she would request a dental appointment. *Id.* at ¶ 24(D).

On July 6th, according to Defendants' records, Dacheff submitted a grievance. *Defts' Ex.* 3 at p. 12; *Resp.* at ¶ 24(E)(Without knowledge to agree or disagree). Dacheff stated he had submitted a number of grievances that had not been responded to. *Id.* He also stated he had a bad tooth, was in pain, and couldn't get anything for the pain. *Defts' Ex.* 3 at pg. 12; *Resp.* at ¶ 24 (F)(Without knowledge to agree or disagree). In response he was asked if he had not received Ibuprofen the previous evening after 6:00 p.m. and whether he asked for any at 5:00 p.m. that day. *Defts' Ex.* 3 at pg. 12; *Resp.* at ¶ 24(G)(Without knowledge to agree or disagree).

On July 7th, Dacheff asked for something for tooth pain. *Resp.* at ¶ 24(H). On July 10th, Nurse Schultz faxed a request to the ADC for authorization for Dacheff to be seen by a dentist. *Defts' Ex.* 2, Vol. 1 pgs 20-21. She stated Dacheff's tooth was draining and infected and that he was insisting on seeing a dentist. *Id.* On July 13th, permission was given by the ADC for Dacheff to be seen locally by a dentist. *Defts' Ex.* 2, Vol. 1 pg. 22.

On July 12th, Dacheff complained that his elbow was still hurting from the accident. *Resp.* at ¶ 27. He indicated he was in pain and that bone fragments were making his arm fall asleep. *Id.* On July 13th, Dacheff complained that he was not getting help for his medical conditions. *Resp.* at ¶ 28; *Defts' Ex.* 2, Vol. 2 pg. 2. He asked when he was going to get to the ADC so he could receive medical attention. *Id.* In response, Dacheff was told an appointment had been made for him to see the dentist. *Id.*

On July 14th, Dacheff complained that he needed to be seen by a dentist.  *Resp.* at ¶ 30(A).  Dacheff said his requests for medical treatment were being ignored.  *Id.*  In response, Nurse Schultz wrote that she was not ignoring Dacheff but instead trying to get him to the dentist.  *Id.* at ¶ 30(B).  She stated she had finally received ADC permission and would make an appointment but the dentist was not in until the following week.  *Id.*

On July 15th, Nurse Schultz called Dixson and asked about Dacheff getting fast tracked.  *Resp.* at ¶ 31(A).  However, Dixson stated she was not in charge of fast tracking.  Dixson told Nurse Schultz that Dacheff was not on the list to be fast tracked.  *Id.*   Dixson also said she would approve Dacheff's dental appointment if she received his parole revocation hearing waiver before the appointment was made.[1]  *Defts' Ex.* 2, Vol. 2 pg. 23.  Nurse Schultz made several telephone calls in an effort to obtain the form.  *Id.*

On July 19th, Dacheff submitted a grievance about not receiving treatment for his abscessed tooth.  *Resp.* at ¶ 32.  He also complained that his elbow needed attention.  *Id.*  In response, Nurse Schultz said she could not make an appointment until the dentist was in.  *Id.* at ¶ 33.  She also said she was still trying to get ADC to approve his appointment with a doctor.  *Id.*

On July 20th, Nurse Schultz submitted a request to the ADC for a doctor's appointment.  *Defts' Ex.* 2, Vol. 2 pgs. 10 & 23.  She stated Dacheff's elbow, collar bone, wrist, and neck injuries from an accident were extremely painful.  *Id.*

Dacheff was seen by a dentist, Dr. Riddick, on July 20th.  *Resp.* at ¶ 35.  It was determined he needed to have a tooth extracted.  *Id.*  Dacheff was to be on a soft diet and use warm salt water

---

[1]The issue of whether Dixson or the ADC exhibited deliberate indifference to Dacheff's serious medical needs is not before this Court.

rinses one or two times a day until his tooth was extracted.  *Id.*

On July 22nd, the ADC approved the extraction of Dacheff's tooth.  *Defts' Ex.* 2, Vol. 2 pgs. 19-20.  An appointment was made for Dacheff on July 28th with Dr. Riddick.  *Id.*  According to Dacheff, he was transferred to the ADC on July 27th.  *Resp.* at ¶¶ 37(B) & 41.

During Dacheff's ADC intake physical it was noted he had:

> full range of motion with your elbows, smooth and natural movement of your hands, full range of motion  of the wrist with 5/5 strength of wrists with resistance.  Wrist ligaments stable when stressed medially and laterally.  Grips strong and equal bilaterally.  Full range of motion noted to your fingers.

*Defts' Ex.* 5, Vol. 1 pg. 3; *Resp.* at ¶ 42(A)(Without knowledge to agree or disagree).

On August 6th, Dacheff submitted a medical request because his wrist and elbow were causing him pain.  *Resp.* at ¶ 42(B).  He stated that the wrist was broken.  *Id.*

Dacheff was seen by the nurse on August 11th.  *Resp.* at ¶ 42(D).  She noted some "bogginess" in the left elbow and a limited range of motion to his right wrist.  *Id.*  She prescribed Acetaminophen.  *Id.*

On August 18th, Dacheff submitted a medical request stating that his wrist and elbow were hurting from when he had an accident.  *Resp.* at ¶ 42(C).  He stated he was told the wrist was broken. *Id.*  He asked for something for pain.  *Id.*

Dacheff was seen on August 19th and x-rays were ordered.  *Resp.* at ¶ 42(E).  It was noted that he possibly had a healing left wrist fracture and periosteal right elbow inflamation.  *Id.*  He was prescribed medications and given physical restrictions.  *Id.*

On August 21st, x-rays of Dacheff's left wrist were taken.  *Resp.* at ¶ 43(A).  The impression is listed as: "Some atrophy or cystic change involving the proximal pole related to a fracture of the

waist of the navicular bone which appears chronic.  Associated degenerative change of the radial carpal joint space is seen." *Id.*

On September 20th, Dacheff complained his wrist was causing a lot of pain.  *Resp.* at ¶ 43(B).  He stated he needed something for the pain.  *Id.*  He was seen by a nurse on September 30th for complaints of his left wrist hurting and because his one arm duty prescription had expired.  *Id.* at ¶ 43(C).  He was given the following restrictions:  one arm/hand duty; no sports activities; no weight bearing; no yard call; and was given a wrist brace until October 30th.  *Id.* at ¶ 43(D).  He was also placed on the doctor's list.  *Id.*

On October 13th, Dacheff asked for something for "really bad" pain in his wrist.  *Resp.* at ¶ 44.  He was seen by the doctor on October 13th.  *Defts' Ex.* 5, Vol. 2 pg. 11; *Resp.* at ¶ 45(Without knowledge to agree or disagree).  The doctor noted Dacheff had sinusitis and a "left wrist deformity with tenderness especially over the anatomic snuff box and weak hand grip." *Id.*  Dacheff was given a variety of prescriptions.  *Resp.* at ¶ 46.  On October 31st, Dacheff complained he was still having problems with his wrist and elbow.  *Id.* at ¶ 47.  Dacheff asked when he would be able to get started using his wrist again.  *Id.*

Dacheff was asked whether he was suing Defendants in their official or individual capacities. He responded stating he was suing them in their official capacities.  *Resp.* at ¶ 49(A).  When asked if he contended a custom or policy of Carroll County resulted in his being deprived of his constitutional rights, he answered yes.  *Id.* at ¶ 49(B).  He asserts he was denied his Eighth Amendment rights.  *Id.*  He indicates he did not get medical attention when he was incarcerated and was unable to obtain medical attention on his own.  *Id.*

When asked how Nurse Brenda Schultz exhibited deliberate indifference to his serious

medical needs, Dacheff responded that she knew he was in an accident and did not treat him. *Resp.* at ¶ 50. With respect to Sheriff Grudek, Dacheff states he addressed his July 2nd grievance to him. *Id.* at ¶ 51. Dacheff notes he sat in the jail from the time of his accident until he was transferred to the ADC and only found out his wrist was broken and received no treatment for it. *Id.* Dacheff asserts it took until June 23rd to get the x-ray done and he still received no treatment. *Id.* *See also Resp.* at ¶ 52.

When asked how he was harmed from the delay in treatment, Dacheff responded that his elbow caused him pain, he could not sleep very well, and when he did sleep his arm went numb. *Resp.* at ¶ 53. He also states he was in pain from his wrist. *Id.*

## II.  APPLICABLE STANDARD

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

## III.  DISCUSSION

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Dacheff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a

subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

I believe there are clearly genuine issues of fact that preclude summary judgment in Defendants' favor in this case. When he was booked in on May 12, 2009, it was noted that Dacheff possibly had a fractured left wrist. *Defts' Ex.* 2, Vol. 1 pgs. 1-2. On May 24th, Dacheff submitted a medical request. *Resp.* at ¶ 4(A). In response, he was told permission would have to be obtained from the ADC before an appointment could be made. *Defts' Ex.* 2, Vol. 1 at pg. 3. Nurse Schultz noted a possible fracture of his left wrist. *Defts' Ex.* 2, Vol. 2 at pg. 22. He was told on May 29th that the ADC approved the request or a doctor's appointment. *Defts' Ex.* 2, Vol. 1 at pg. 7. On June 11th, it was noted Dacheff's right ankle was swollen, discolored, and he was having some difficulty walking. *Defts' Ex.* 2, Vol. 1 at pg. 22.

Dacheff was not seen by Dr. Malone until June 23rd. *Defts' Ex.* 4. Dacheff was diagnosed with a left wrist fracture, and soft tissue injuries to the back, ankle, and elbow. *Defts' Ex.* 4 at pg. 14. Dacheff was to be referred to an orthopedic doctor about his wrist. *Id.* Chart notes written by Gloria Wood indicate Dacheff might have a permanent disability as a result of not having been

-10-

provided medical assistance more quickly. *Id.* at pg. 13. On July 2nd, Dacheff was informed the ADC would not approve further treatment. *Defts' Ex.* 3 at pg. 10.

Dacheff has a constitutional right to adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The CCDC is obligated to "provide inmates in their custody with medical care." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). In this case, it appears on the record before me, that the CCDC followed a policy of not providing medical care to ADC committed inmates, without prior approval from the ADC, regardless of the medical judgment of those who had seen or treated the inmate. If the ADC did not approve the requested medical care, it was not provided. I believe there are genuine issues of fact both as to whether Nurse Schultz exhibited deliberate indifference to Dacheff's serious medical needs and as to whether the policy or practice with respect to the provision of medical care to ADC committed inmates led to a violation of Dacheff's constitutional rights. *Cf. Toombs v. Bell*, 915 F.2d 345, 347 (8th Cir. 1990)(Defendants may not absolve themselves from liability under § 1983 by contracting the provision of inmate health care to a private organization).

## IV.  CONCLUSION

For the reasons stated, I recommend that the Defendants' motion for summary judgment (Doc. 15) be denied.

**The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the**

**district court.**

  DATED this 24th day of February 2011.

        /s/ *J. Marschewski*

        HON. JAMES R. MARSCHEWSKI
        CHIEF UNITED STATES MAGISTRATE JUDGE